UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CONTAINER STORE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2893-B |
| | § | |
| FORTNA INC. and STEEL KING INDUSTRIES, INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Fortna, Inc. ("Fortna")'s Motion to Dismiss (Doc. 18) claims alleged by Plaintiff The Container Store, Inc. ("TCS"). Fortna first moves to dismiss all of TCS's claims based on TCS's failure to exhaust contractual dispute resolution procedures. Alternatively, Fortna moves to dismiss TCS's fraud, fraudulent-inducement, and negligent-misrepresentation claims based on the economic-loss doctrine.

For the reasons set forth below, Fortna's motion is **GRANTED IN PART** and **DENIED IN PART**. Namely, the Court denies the motion insofar as Fortna seeks dismissal or a stay of the case based on the lack of settlement efforts between the parties. Likewise, to the extent Fortna moves to dismiss TCS's fraudulent-inducement claim based on the economic-loss doctrine, the Court denies Fortna's motion. Finally, the Court grants Fortna's motion insofar as Fortna seeks dismissal of the negligent-misrepresentation and common-law fraud claims based on the economic-loss doctrine.

I.

BACKGROUND[1]

This removed case arises from a contract dispute. In 2016, TCS consulted with Fortna regarding the effectiveness of TCS's distribution network, whether it should build an additional distribution facility, and where such facility should be located. Doc. 9, Am. Compl., ¶¶ 19–23; Doc. 18, Def.'s Mot., ¶ 1. This consulting relationship continued over the next several years, as Fortna not only recommended that TCS build a new distribution facility on the East Coast, but also indicated that TCS could hire Fortna to design and construct the facility. *See* Doc. 9, Am. Compl., ¶¶ 24–25; Doc. 18, Def.'s Mot., ¶¶ 1, 5. In sum, TCS hired Fortna to build the distribution facility, but as further detailed below, TCS asserts that the projected cost savings and return on investment from building the facility did not in fact materialize as Fortna represented they would. *See* Doc. 9, Am. Compl., ¶¶ 39–40, 43–44; Doc. 18, Def.'s Mot., ¶¶ 5–6, 8.

Throughout their consulting arrangement, TCS and Fortna entered several contracts. First, on October 12, 2016, they entered into an "umbrella agreement," called the Master Consultant Services Agreement ("MCSA"). Doc. 18, Def.'s Mot., ¶ 2; *see* Doc. 19-1, Def.'s Ex. 1, 1, 15. The MCSA defined the parties' relationship and set forth general terms regarding topics such as services, personnel, pricing, payment, and warranties. *See* Doc. 19-1, Def.'s Ex. 1, 1–9. Under the MCSA, TCS made "no commitment to buy any [s]ervices from [Fortna]." *Id.* at 1. The MCSA indicated that more specific terms and obligations would be set out in future Statements of Work ("SOW")

---

[1] The Court draws the facts from TCS's amended complaint (Doc. 9) and the documents attached to Fortna's motion to dismiss that are "referred to in [TCS's] complaint and are central to [TCS's] claim[s]." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (citation omitted).

between the parties. *See id.*

The parties entered the first SOW on October 25, 2016. Doc. 19-2, Def.'s Ex. 2, 7. The first SOW required Fortna to assess TCS's current distribution networks and identify alternative solutions for distribution of TCS's merchandise. *Id.* at 3. Fortna states that TCS was responsible for "providing 'data assumptions'" to Fortna pursuant to the first SOW, while Fortna was responsible for analyzing "alternative[s]" for distribution based on "Return on Investment." Doc. 19, Def.'s Mot. Br., 3–4; *see* Doc. 19-2, Def.'s Ex. 2, 2. The first SOW also contained a provision titled "Issue Resolution and Escalation Process" (hereinafter "the Dispute Resolution Provision"), which states:

> (a) If any disagreement of any kind or nature whatsoever arises between TCS and FORTNA with respect to this SOW, TCS and FORTNA shall first attempt to resolve the disagreement informally. If the Parties are unable to so resolve the disagreement, either Party may request a meeting between the executive sponsors listed in Section 1 or such executive sponsor's successor.
> (b) The Parties shall use reasonable efforts and shall conduct discussions in good faith to resolve all disagreements.

Doc. 19-2, Def.'s Ex. 2, 7.[2]

TCS alleges that in 2017, Fortna made "multiple presentations" and gave TCS written materials representing that building a distribution center on the East Coast would save TCS millions of dollars. Doc. 9, Am. Compl., ¶¶ 29–36. According to TCS, Fortna represented in July 2017 that TCS would save $7.3 million annually in shipping and other costs if it hired Fortna to build the East Coast facility and that TCS would see a return on its investment in three-to-five years. *Id.* ¶¶ 24, 28, 31.

---

[2] In reply, Fortna provides evidence of a third SOW entered on October 31, 2017, which focused on the design and "[s]upport[ing] [of] site selection" for the distribution facility. Doc. 28-2, Def.'s Ex. 2, 2–3, 8. But the Court cannot consider the third SOW in ruling on the motion to dismiss, as it is not attached to the complaint, nor is it "attached to [Fortna's] motion to dismiss . . . ." *Gines*, 699 F.3d at 820.

TCS asserts that when it was unpersuaded by these presentations, Fortna then represented in November and December 2017 that TCS would save $9.5 million annually and see a return on its investment in under three years if it decided to build the East Coast facility. *Id.* ¶¶ 31–32, 34–36.

According to TCS, it then agreed to hire Fortna to build the East Coast facility, so on August 6, 2018, the parties entered into the Material Handling System Design and Install Agreement ("MHSA"), which governed the design, procurement, and installation of the facility. *Id.* ¶¶ 39–40; *see* Doc. 19-3, Def.'s Ex. 3, 1–2, 26. TCS alleges that it spent over $20 million on the facility. Doc. 9, Am. Compl., ¶ 42. In 2020, however, TCS "realized" that the $9.5 million in promised savings "was simply not happening," and asserts that it never would have invested in building the facility but for its reliance on Fortna's representations. *Id.* ¶¶ 5, 44.

TCS further contends that it asked to review Fortna's calculations supporting the representations of projected savings, but Fortna could not produce its own data. *Id.* ¶¶ 45–46. Moreover, Fortna allegedly refused to "re-run[]" the numbers because doing so would be "prohibitively expensive." *Id.* ¶¶ 47–48.

Additionally, TCS alleges "significant defects" and "deficiencies" in the "racking system installed" at the East Coast facility, despite warranties on the racking system from Fortna and Defendant Steel King Industries, Inc. ("Steel King"), "the company that fabricated and installed the racking system[.]" *Id.* ¶¶ 7–10.

Based on these allegations, TCS now asserts fraudulent-inducement, common-law fraud, negligent-misrepresentation, breach-of-contract, and breach-of-warranty claims against Fortna, as well as breach-of-contract and breach-of-warranty claims against Steel King. *See id.* ¶¶ 92–148. Fortna filed a motion to dismiss (Doc. 18) on November 20, 2020. Since the motion is now ripe, the

Court considers it below.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted[.]" *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

## III.

## ANALYSIS

Fortna moves to dismiss each of TCS's claims based on TCS's alleged failure to comply with the Dispute Resolution Provision. Doc. 18, Def.'s Mot., ¶ 12. Additionally, Fortna moves to dismiss TCS's fraudulent-inducement, fraud, and negligent-misrepresentation claims, asserting that they are barred by the economic-loss doctrine. *Id.* ¶ 13. The Court addresses each argument below.

A. *The Court Will Not Dismiss or Stay This Action Based on the Dispute Resolution Provision.*

In its motion to dismiss, Fortna asks the Court to either: (1) dismiss this action so that the parties can conduct settlement discussions in good faith; or (2) order the parties to engage in settlement discussions and stay the case pending said discussions. Doc. 19, Def.'s Mot. Br., 8–10. Both requests are premised upon Fortna's contention that TCS failed to comply with the Dispute Resolution Provision. *See id.* As explained below, the Court concludes TCS complied with the mandatory language of the Dispute Resolution Provision. Thus, the Court will not dismiss or stay this case.[3]

Fortna suggests that TCS has "ignored its contractual obligations" and filed a "lawsuit by ambush" by failing to "communicate to Fortna that it was contemplating litigation, provide formal notice of a breach, or provide Fortna the opportunity to exercise its contractual right to request a meeting between listed executives[.]" *Id.* at 9. But Fortna seeks more from TCS than the Dispute Resolution Provision requires—it mandates only that the parties "first attempt to resolve [any] disagreement informally"; "use reasonable efforts" in seeking a resolution; and "conduct discussions

---

[3] The Court assumes without deciding that the Dispute Resolution Provision applies to the present dispute between the parties.

in good faith[.]" Doc. 19-2, Def.'s Ex. 2, 7.

To the extent the Court can enforce this language, it concludes that TCS has complied with these requirements. With respect to the alleged misrepresentations, TCS explains that it pointed out these misrepresentations in February 2020 and asked Fortna to explain the basis for the representations in March 2020, but TCS has not received further information regarding Fortna's data modeling or "a mitigation strategy." Doc. 27, Pl.'s Resp., 9–10. And with regard to the defective racking alleged by TCS, TCS describes how representatives from TCS and Fortna "performed [a] site visit" to assess the alleged damage in January 2020. *Id.* at 10. TCS also relays that it demanded reimbursement for the racking, while Fortna offered to repaint the racking system and repair certain parts. *Id.* at 11. Finally, as of March 23, 2021, counsel for TCS and Fortna have scheduled a meeting with representatives from TCS and Fortna to discuss settlement. *See generally* Doc. 30, Jt. Status Report; Doc. 31; Supplemental Jt. Status Report. Under these circumstances, TCS has (and is) attempting informal resolution, using reasonable efforts, and engaging in discussions in good faith. Doc. 19-2, Def.'s Ex. 2, 7.[4] Consequently, the Court **DENIES** Fortna's motion insofar as it seeks dismissal or a stay pending compliance with the Dispute Resolution Provision.

B.   *The Economic-Loss Doctrine Bars the Negligent-Misrepresentation and Common-Law Fraud Claims as Currently Pleaded, but It Does Not Bar the Fraudulent-Inducement Claim.*

Fortna contends that it made the alleged misrepresentations pursuant to the first SOW and the MCSA. Doc. 19, Def.'s Mot. Br., 10. Thus, Fortna maintains that based on the economic-loss

---

[4] Insofar as Fortna also seeks dismissal or a stay based on TCS's failure to "provide Fortna the opportunity . . . to request a meeting between listed executives," Doc. 19, Def.'s Mot. Br., 9, the Dispute Resolution Provision does not require TCS to delay litigation for a specific period of time, and neither party suggests Fortna has requested such a meeting. *See* Doc. 19, Def.'s Mot. Br., 9 n.12; Doc. 27, Pl.'s Resp., 11; Doc. 28, Def.'s Reply, 9.

doctrine, these claims should be dismissed and the suit should be controlled by breach-of-contract, rather than tort, claims. Doc. 18, Def.'s Mot., ¶ 13. TCS, on the other hand, argues that Fortna's representations "were extra contractual in nature[.]" Doc. 9, Am. Compl., ¶ 37.[5] TCS also alleges that Fortna made the representations in question "seeking to convince [TCS] to hire Fortna" to build the East Coast facility. *Id.* ¶ 28. As a result, TCS states that it relied on these representations and "contracted with Fortna to build the distribution center . . . in 2018." *Id.* ¶ 39. Below, the Court provides an overview of the economic-loss doctrine. Then, the Court explains how the economic-loss doctrine applies to each of the claims at issue.

1.  The economic-loss doctrine

Under Texas law, "[t]he economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). But not all tort claims "arising out of a contractual setting" are barred by the rule, because barring all such claims would enable parties to "avoid tort liability to the world simply by entering into a contract[.]" *Id.* (citations omitted). To determine "whether an action sound[s] in tort or in contract," the Court must "analyze[] both the source of the duty and the nature of the remedy[.]" *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). The economic-loss rule does not bar tort claims "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely

---

[5] To the extent TCS suggests that the representations at issue were extra-contractual because they were made after the first SOW's "projected" completion date of February 2017, *see* Doc. 19-2, Def.'s Ex. 2, 3, 10, the Court is not convinced that an estimated completion date for Fortna's obligations under the first SOW divorces TCS's misrepresentation claims from the contracts between TCS and Fortna.

the economic loss of a contractual benefit." *Chapman*, 445 S.W.3d at 718 (citations omitted).

### a. Fraudulent inducement

Fortna moves to dismiss TCS's fraudulent-inducement claim by asserting that it is barred by the economic-loss rule. Doc. 19, Def.'s Mot. Br., 10–14. Fraudulent inducement and common-law fraud share the same basic elements, but Texas courts describe fraudulent inducement as "a species of common-law fraud" that arises out of contract. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). A fraudulent-inducement claim requires: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Id.* (citations omitted). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is [also] an essential part of its proof." *Id.* (citation omitted). In other words, "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).

Under Texas law, the economic-loss rule does not bar fraudulent-inducement claims. *See Formosa Plastics*, 960 S.W.2d at 46–47. These claims are treated as an exception to the rule because the source of the duty not to fraudulently induce a contract arises in common law, not from any contract. *See id.* at 46. As the Texas Supreme Court explains, "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id.* (citation omitted). Further, the economic-loss rule does not bar fraudulent-inducement claims even when "the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.* at 47. Accordingly, the economic-loss doctrine does not bar TCS's fraudulent-inducement claim.

In its reply brief, Fortna makes two new arguments related to TCS's fraudulent-inducement

claim.

Fortna first maintains that TCS's fraudulent-inducement claim should be dismissed because TCS did not allege that Fortna made the representations at issue "for the purpose of inducing" TCS to enter the MHSA. Doc. 28, Def.'s Reply, 6. Yet TCS alleges that Fortna fraudulently induced it to hire Fortna to build the facility, and this hiring decision led the parties to enter into the MHSA. *See* Doc. 9, Am. Compl., ¶ 99. Moreover, TCS sufficiently alleges the intent required for a fraudulent-inducement claim by alleging that Fortna made the representations "with the intent that [TCS] would rely on [them]" by hiring Fortna to build the facility. *See id.*

Fortna also contends that TCS failed to plead a "necessary element" of fraudulent inducement. Doc. 28, Def.'s Reply, 6 (citations omitted). According to Fortna, TCS was required to plead that Fortna made the representations at issue "with no intention of performing its obligations under the [contract]." *Id.* However, this is not an element of TCS's fraudulent-inducement claim, because Fortna's representations did not involve a "false promise of future performance[.]" *See Anderson*, 550 S.W.3d at 614 (citation omitted). Accordingly, TCS need not establish that Fortna made promises of future performance with no intention of performing. *See, e.g.*, *Express Working Cap., LLC v. Starving Students, Inc.*, 28 F. Supp. 3d 660, 672 (N.D. Tex. 2014) (analyzing a fraudulent-inducement claim without reference to the defendant's intention of performing when the plaintiff asserted that it relied on the defendant's false financial representations and was thus fraudulently induced to enter into a contract).

In any event, Fortna introduced both of these arguments in its reply brief, meaning that TCS did not have an opportunity to respond. *See* Doc. 28, Def.'s Reply, 6. Thus, the Court rejects Fortna's assertion that TCS's fraudulent-inducement claim was inadequately pleaded.

Overall, because fraudulent inducement is an exception to the economic-loss rule and TCS has sufficiently pleaded its claim, the Court **DENIES** Fortna's motion to dismiss the claim.

   *b.*  *Negligent misrepresentation*

Fortna maintains that the economic-loss rule also bars TCS's negligent-misrepresentation claim. Doc. 18, Def.'s Mot., ¶ 13. The elements of a negligent-misrepresentation claim are:

> (1) the defendant made a representation in the course of the defendant's business, or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Lindsey Constr., Inc. v. AutoNation Fin. Servs., LLC*, 541 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). "[F]alse information" in this context "means a misstatement of existing fact, not a promise of future conduct." *Id.* (citations omitted).

The economic-loss rule applies to negligent-misrepresentation claims, thus typically "preclud[ing] recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). Accordingly, to avoid operation of the economic-loss rule in the context of negligent misrepresentation, a plaintiff must establish an independent duty and an independent injury, both arising apart from contract. *Id.* (citations omitted).

While Fortna's argument is largely based on its insistence that the representations at issue were governed by contract, *see* Doc. 28, Def.'s Reply, 5, the Court's inquiry is more specific: it

focuses on whether TCS has sufficiently pleaded that the source of Fortna's duty and the nature of TCS's harm arise independently of any contract between the parties.

First, regarding injury, TCS claims that it seeks reliance damages and not benefit-of-the-bargain damages because in relying on Fortna's representations, it invested "more than $20 million to build [the] distribution facility." Doc. 9, Am. Compl., ¶ 5; Doc. 27, Pl.'s Resp., 19. Texas courts adopt the Second Restatement's view that plaintiffs may recover reliance damages for negligent misrepresentation because these damages are distinct from "economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing, *inter alia*, Restatement (Second) of Torts § 552B (Am. L. Inst. 1977)). Thus, based on Texas law, TCS sufficiently pleaded an injury distinct from breach-of-contract harm. *See* Doc. 9, Am. Compl., ¶ 5; Doc. 27, Pl.'s Resp., 19.

To survive operation of the economic-loss rule, however, TCS must also establish that its negligent-misrepresentation claim is for a breach of a duty that is "imposed by law" and not merely "created by contract[.]" *See Hurd*, 880 F. Supp. 2d at 763 (citations omitted). Fortna maintains that TCS fails to "allege that Fortna owed it any duty other than its responsibilities under the various contracts." Doc. 18, Def.'s Mot., ¶ 14.

The Court agrees. In its amended complaint, TCS does not plead any independent duty in support of its negligent-misrepresentation claim. *See* Doc. 9, Am. Compl., ¶¶ 109–18. TCS asserts in its response that Fortna had a common-law duty "not to make misrepresentations[.]" *See* Doc. 27, Pl.'s Resp., 2. But TCS failed to allege this duty in its amended complaint, *see generally* Doc. 9, Am. Compl., so the Court will not consider it now. *See, e.g.*, *Hearn v. Deutsche Bank Nat'l Tr. Co.*, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014) ("[W]hen considering a motion to dismiss, the

Court generally only relies on the allegations made in the pleadings, and does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response." (citation omitted)). Thus, TCS's negligent-misrepresentation claim, as currently alleged, is barred by the economic-loss doctrine and fails to state a claim upon which relief may be granted. Accordingly, the Court **GRANTS** Fortna's motion to dismiss the negligent-misrepresentation claim and **DISMISSES** this claim **WITHOUT PREJUDICE**.

### c. *Common-law fraud*

Finally, Fortna moves to dismiss TCS's common-law fraud claim, relying upon the same arguments it provided for the negligent-misrepresentation claim. *See* Doc. 18, Def.'s Mot., ¶ 13. Specifically, Fortna asserts that it made the representations at issue pursuant to contracts between the parties and that the common-law fraud claim is thus barred by the economic-loss rule. *See id.*; Doc. 28, Def.'s Reply, 5.

A common-law fraud claim requires: "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citation and quotation marks omitted). Unlike fraudulent-inducement claims, however, common-law fraud claims are subject to the economic-loss rule. *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 2015 WL 12723054, at *4–5 (N.D. Tex. Mar. 12, 2015) (citing *Formosa Plastics*, 960 S.W.2d at 46–47). Thus, the economic-loss rule bars recovery on a common-law fraud claim when the claim is not based on a duty that arises independently of the contract and the plaintiff's injury is not distinct from breach-of-contract harm. *See id.* at *5–6.

Accordingly, to the extent that TCS raises a common-law fraud claim, TCS must establish that Fortna breached an independent duty, as is required for its negligent-misrepresentation claim.[6] While TCS has pleaded harm that is distinct from breach of contract,[7] it has failed to plead an independent duty. *See* Doc. 9, Am. Compl., ¶¶ 92–108.

Thus, the Court finds that the common-law fraud claim fails to state a claim upon which relief may be granted for the same reason as the negligent-misrepresentation claim. The Court therefore **GRANTS** Fortna's motion to dismiss this claim and **DISMISSES** the claim **WITHOUT PREJUDICE**.

C.  *The Court Grants TCS Leave to Amend Its Negligent-Misrepresentation and Common-Law Fraud Claims.*

Given that this is the Court's first opportunity to assess the sufficiency of TCS's allegations, the Court finds it appropriate to provide TCS one chance to amend its complaint in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court **ORDERS** TCS to file a second amended complaint within **FOURTEEN (14)** days of the date of this Order. TCS must file a second amended complaint irrespective of whether it decides to proceed only with its fraudulent-inducement claim

---

[6] TCS pleads "Common Law Fraud/Fraudulent Inducement Against Fortna," yet TCS does not clearly delineate between common-law fraud and fraudulent inducement. *See* Doc. 9, Am. Compl., ¶¶ 92–108. Further, in its response, TCS focuses more on fraudulent inducement and negligent misrepresentation than it does on common-law fraud. *See generally* Doc. 27, Pl.'s Resp. Therefore, it is unclear whether TCS intends to plead common-law fraud as an independent claim or intends to proceed only with fraudulent inducement. If TCS intends to sustain a common-law fraud claim, TCS should clearly distinguish between its common-law fraud and fraudulent-inducement claims, as well as base its common-law fraud claim on an independent duty that is distinct from the independent duty not to fraudulently induce a contract.

[7] TCS's assertion of reliance damages is sufficient to satisfy the independent-harm requirement for its common-law fraud claim, just as it satisfies the same requirement for its negligent-misrepresentation claim.

or re-plead the common-law fraud and negligent-misrepresentation claims.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Fortna's motion (Doc. 18). Further, the Court **ORDERS** TCS to file its second amended complaint within **FOURTEEN (14)** days of the date of this Order.

**SO ORDERED.**

**SIGNED: April 5, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE