UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CONTAINER STORE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2893-B |
| | § | |
| FORTNA INC. and STEEL KING INDUSTRIES, INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Fortna, Inc. ("Fortna")'s Motion to Dismiss Count II of the Second Amended Complaint (Doc. 42). Fortna moves to dismiss Plaintiff The Container Store, Inc. ("TCS")'s negligent-misrepresentation claim as barred by the economic-loss rule. For the reasons set forth below, the Court **DENIES** Fortna's motion.

### I.

### BACKGROUND[1]

This removed case arises from a contract dispute. In 2016, TCS was debating whether to build a second distribution facility. Doc. 34, Second Am. Compl., ¶ 19. So TCS consulted with Fortna, a company that had "marketed itself as an expert in saving businesses substantial money by," among other tasks, "providing advice on how best to maximize revenue and reduce shipping costs." *Id.* ¶ 20. TCS consulted with Fortna regarding the effectiveness of TCS's distribution network, which

---

[1] The Court draws the facts from TCS's second amended complaint (Doc. 34) and the documents attached to Fortna's motion to dismiss that are "referred to in [TCS's] complaint and are central to [TCS's] claim[s]." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (citation omitted).

"operated solely out of Texas," and whether TCS should build an additional distribution facility on the East Coast. *Id.* ¶¶ 22–24. This consulting relationship continued over the next several years, as Fortna not only recommended that TCS build a new distribution facility on the East Coast, but also indicated that TCS could hire Fortna to design and construct the facility. *See id.* ¶¶ 24–25. In sum, TCS hired Fortna to build the distribution facility, but as further detailed below, TCS asserts that the projected cost savings and return on investment from building the facility did not in fact materialize as Fortna represented they would. *See id.* ¶¶ 36–38, 46–54.

Throughout their consulting arrangement, TCS and Fortna entered several contracts. First, on October 12, 2016, they entered into an "umbrella agreement" called the Master Consultant Services Agreement ("MCSA"). *See* Doc. 43-3, Def.'s Ex. 1, 1, 15. The MCSA defined the parties' relationship and set forth general terms regarding topics such as services, personnel, pricing, payment, and warranties. *See id.* at 1–9. The MCSA indicated that more specific terms and obligations would be set out in future Statements of Work ("SOW") between the parties. *See id.* at 1.

The parties entered the first SOW on October 25, 2016. Doc. 43-1, Def.'s Ex., 7. The first SOW required Fortna to assess TCS's current distribution networks and identify alternative solutions for distribution of TCS's merchandise. *See id.* at 3–4. Nearly one year later, on October 31, 2017, the parties executed the third SOW, which tasked Fortna with assisting TCS in implementing and designing a new distribution facility. *See* Doc. 43-2, Def.'s Ex., 1–2. As part of its duties under the third SOW, Fortna was to "Analyze TCS Distribution Operations Data" and "Update the TCS Business Case for presentation" to TCS's Board of Directors. *Id.* at 2.

In its second amended complaint, TCS alleges that in 2017, Fortna made "multiple presentations" and gave TCS written materials representing that building a distribution center on

the East Coast would save TCS millions of dollars. Doc. 34, Second Am. Compl., ¶¶ 29–31, 36–38. According to TCS, Fortna represented in July 2017 that TCS would save $7.3 million annually in shipping and other costs if it built the East Coast facility and that TCS would see a return on its investment in three-to-five years. *Id.* ¶¶ 30–31.

TCS asserts that when it was unpersuaded by these presentations, Fortna then provided TCS with written materials representing that TCS would save $9.5 million annually and see a return on its investment in under three years if it decided to build the East Coast facility. *Id.* ¶¶ 36–37. TCS alleges that Fortna provided these materials on November 27, 2017, for consideration at TCS's Board of Directors meeting held on December 12, 2017. *Id.* ¶¶ 36, 38.

According to TCS, it then agreed to hire Fortna to build the East Coast facility, so on August 7, 2018, the parties entered into the Material Handling System Design and Install Agreement ("MHSA") for the construction of the facility. *Id.* ¶¶ 40–42. TCS alleges that it spent over $20 million on the facility. *Id.* ¶ 44. In 2020, however, TCS "realized" that the $9.5 million in promised savings "was simply not happening," and asserts that it never would have invested in building the facility and entered the MHSA but for its reliance on Fortna's representations. *Id.* ¶¶ 40, 46.

TCS further contends that it asked to review Fortna's calculations supporting the representations of projected savings, but Fortna could not produce its own data. *Id.* ¶¶ 47–48. Moreover, Fortna allegedly refused to "re-run[]" the numbers because doing so would be "prohibitively expensive." *Id.* ¶¶ 49–50.[2]

---

[2] Additionally, TCS alleges "significant defects" and "deficiencies" in the "racking system installed" at the East Coast facility, despite warranties on the racking system from Fortna and Defendant Steel King Industries, Inc. ("Steel King"), "the company that fabricated and installed the racking system[.]" *Id.* ¶¶ 7–10.

TCS brought suit against Fortna and Steel King in Texas state court. *See generally* Doc. 1, Notice of Removal. Steel King then removed the case to this Court based on diversity jurisdiction. *See id.* at 1–2. Thereafter, TCS amended its complaint to assert fraudulent-inducement, common-law fraud, negligent-misrepresentation, breach-of-contract, and breach-of-warranty claims against Fortna, as well as breach-of-contract and breach-of-warranty claims against Steel King. Doc. 9, Am. Compl., ¶¶ 92–148.

Fortna moved to dismiss TCS's amended complaint based on TCS's alleged failure to comply with a dispute-resolution clause, as well as its alleged failure to state a claim for fraud, fraudulent inducement, and negligent misrepresentation due to operation of the economic-loss rule. Doc. 18, Def.'s Mot., 4. The Court denied Fortna's motion except to the extent it sought dismissal of TCS's common-law fraud and negligent-misrepresentation claims against Fortna. Doc. 32, Mem. Op. & Order, 1. With respect to those two claims, the Court held that TCS had failed to plead that Fortna owed TCS an independent duty and, therefore, that the claims were barred by the economic-loss doctrine. *See id.* at 12–14. Nevertheless, the Court afforded TCS one opportunity to amend these claims. *Id.* at 14.

TCS timely filed its second amended complaint (Doc. 34). In the complaint, TCS dropped its common-law fraud claim but again alleged its negligent-misrepresentation claim, alleging that Fortna "had an independent duty not to make misrepresentations" and "not to induce a contract based on errant representations . . . ." Doc. 34, Second Am. Compl., ¶¶ 33–34.

Fortna then moved to dismiss TCS's negligent-misrepresentation claim on the ground that TCS still has not sufficiently alleged an independent duty. Doc. 42, Def.'s Mot., 1–2. Consequently, Fortna contends, the economic-loss doctrine bars TCS's negligent-misrepresentation claim. Doc. 43,

Def.'s Br., 1. Fortna's motion is now ripe for review, so the Court considers it below.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted[.]" *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

## III.

## ANALYSIS

The only issue before the Court is whether TCS sufficiently pleaded that Fortna owed TCS an independent duty such that its negligent-misrepresentation claim survives operation of the economic-loss doctrine at the motion-to-dismiss stage. The Court concludes that TCS has done so.

As this Court has previously explained, *see* Doc. 32, Mem. Op. & Order, 7-8, "[t]he economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). But not all tort claims "arising out of a contractual setting" are barred by the rule, because barring all such claims would enable parties to "avoid tort liability to the world simply by entering into a contract[.]" *Id.* (citations omitted). To determine "whether an action sound[s] in tort or [in] contract," the Court must "analyze[] both the source of the duty and the nature of the remedy[.]" *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). The economic-loss rule does not bar tort claims "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman*, 445 S.W.3d at 718 (citations omitted). To avoid operation of the economic-loss rule in the context of negligent misrepresentation, a plaintiff must establish an independent duty and an independent injury, both arising apart from contract. *Hurd v. BAC Home Loans Servicing*, LP, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citations omitted).[3]

---

[3] The Court has already found that TCS sufficiently alleged an independent injury. *See* Doc. 32, Mem. Op. & Order, 12.

In its operative complaint, TCS alleges that Fortna owed TCS an "independent duty not to make misrepresentations" and "not to induce a contract based on errant representations . . . ." Doc. 34, Second Am. Compl., ¶¶ 33–34. To support its negligent-misrepresentation claim, TCS alleges that Fortna's representations prepared for the December 2017 board meeting were made: "with a negligent and reckless regard for the truth"; "in the course of Fortna's business, or in a transaction with Fortna having a pecuniary interest"; and "for the guidance of" TCS. *Id.* ¶¶ 119–21. TCS further alleges that "Fortna supplied [the] information for the guidance of [TCS] and did not exercise reasonable care in the transmission of this information." *Id.* ¶ 121.

Upon review of relevant Texas law, the Court concludes that these factual allegations sufficiently allege Fortna's independent duty to "use reasonable care when supplying information in the course of its business for the guidance of others in their business[.]" *Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., LLC*, 945 F.3d 423, 430 (5th Cir. 2019) (applying Texas law) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

In *Correct RX*, the Fifth Circuit upheld the district court's determination that the plaintiff's negligent-misrepresentation claim survived the economic-loss doctrine. *Id.* at 425. The parties in *Correct RX* entered a contract on May 1, 2014, for installation of a pharmacy-automation system within thirty weeks. *Id.* at 425–26. Due to delays, the parties then extended the deadline for installation by entering an amended agreement on September 10, 2014. *Id.* at 426. Ultimately, the defendant did not timely install the system, and the plaintiff brought suit, alleging that the defendant "had made false statements to induce [the plaintiff] to enter into the contract and to agree to the . . . deadline extension." *Id.* at 427. At trial, the jury found the defendant liable for negligent misrepresentation based on its misrepresentations of "its resources and capabilities during

pre-contract negotiations or during negotiations for the contract modification to extend the deadline." *Id.* at 427, 430.

On appeal, the Fifth Circuit held that the plaintiff's negligent-misrepresentation claim in *Correct RX* was not barred by the economic-loss doctrine. *Id.* at 431. In assessing whether the defendant owed the plaintiff an independent duty under the facts, the Fifth Circuit pointed out that the Texas Supreme Court has adopted "the negligent misrepresentation framework set forth in section 552 of the SECOND RESTATEMENT," and under this framework, "a party has a legal duty to use reasonable care when supplying information in the course of its business for the guidance of others in their business, and this duty exists independent of any contractual obligation." *Id.* at 430 (citation omitted). And applying that duty, the Fifth Circuit reasoned that the defendant "had a duty to use reasonable care in obtaining and communicating information about its operations to [the plaintiff] for the purpose of guiding [the plaintiff's] decision on whether to purchase [the defendant's] automated-pharmacy system." *Id.* at 430 (citation omitted). The court went on to emphasize that it was "not necessary for [the plaintiff] to prove that a contract existed between it and [the defendant] to recover based on the misrepresentations that [the defendant] negligently made." *Id.* at 430–31 (citation omitted).

Likewise, here, TCS has pleaded facts sufficient to suggest that Fortna, acting in the course of its business, owed TCS an independent duty to exercise reasonable care in providing TCS with information for guidance in TCS's business. As noted above, TCS alleges that Fortna made its alleged misrepresentations "in the course of [its] business" and "for the guidance of" TCS. Doc. 34, Second Am. Compl., ¶¶ 120–21. Further, TCS alleges a breach of the duty set forth in *Correct RX* by alleging that Fortna "did not exercise reasonable care" in transmitting the information to TCS.

*Id.* ¶ 121.[4] These allegations, coupled with TCS's allegation that Fortna did indeed owe TCS an independent legal duty, suffice to withstand dismissal based on the economic-loss doctrine.[5]

Specifically, like the negligent-misrepresentation claim at issue in *Correct RX*, TCS's claim here—as presently alleged—does not require TCS to show that a contract existed between TCS and Fortna. *See Correct RX*, 945 F.3d at 430–31. Irrespective of whether Fortna made its representations to fulfill an obligation under a SOW, Fortna may still be liable for negligent misrepresentation given the independent duty recognized in *Correct RX* and the independent injury—reliance damages—claimed by TCS. *See* Doc. 32, Mem. Op. & Order, 12. Accordingly, TCS has sufficiently alleged its negligent-misrepresentation claim in a manner such that it is not necessarily barred by the economic-loss doctrine.[6]

## IV.

## CONCLUSION

For the reasons stated, the Court **DENIES** Fortna's motion to dismiss (Doc. 42).

---

[4] Indeed, the operative complaint in *Correct RX* alleged that the defendants "did not exercise reasonable care or competence in obtaining or communicating . . . information to" the plaintiff. Second Am. Compl., ¶ 61, *Correct RX Pharmacy Servs. Inc. v. Cornerstone Automation Sys., LLC*, No. 3:15-cv-3006-N (N.D. Tex. Feb. 22, 2017), ECF No. 44.

[5] As a result of this holding, the Court need not determine whether Fortna's alleged duties not to make misrepresentations and not to fraudulently induce a contract are independent duties sufficient to withstand the economic-loss doctrine's application to a negligent-misrepresentation claim. *See* Doc. 34, Second Am. Compl., ¶¶ 33–34.

[6] In so holding, the Court does not comment upon the merits of TCS's negligent-misrepresentation claim, nor does it preclude Fortna from re-urging application of the economic-loss doctrine at summary judgment should it have additional legal authority and argument supporting the doctrine's application.

SO ORDERED.

SIGNED: June 28, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE